David T. Gibbons, J.
Upon the foregoing papers it is ordered that this motion by plaintiff for a protective order: (1) denying discovery of the transcript of the examination of plaintiff’s president, Hy Zausner; and (2) vacating defendants’ notice for discovery and inspection of said transcript, is granted.
The automatic immunity rule applied in Finegold v Lewis (22 AD2d 447) and other similar cases cited by plaintiff in support of its motion are not pertinent to the instant action. That doctrine is applicable only to statements given to the insured’s liability insurance carrier. (See Welch v Globe Ind. Co., 25 AD2d 70; Gallagher v Woodley Co., 22 AD2d 763.) Here, we are involved with a property damage claim — a subrogation action instituted in the name of the plaintiff by *232 its property insurance carrier which has already paid its insured, the plaintiff, its claim for reimbursement for the damage to certain insured property. In this type of action therefore, the availability of such transcript involves the usual sui generis investigation necessitated by CPLR 3101 (subd [d]). (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3101:32, p 36.) What this means is that "The facts relative to the item being sought and the circumstances under which it was secured or prepared must be looked into, often on conflicting contentions between the parties, and the allowance or disallowance of the item must abide a judicial determination of whether this particular item was prepared for litigation.” (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3101:30, p 35.)
The facts show that the property damage loss occurred on November 25, 1971 and plaintiff’s insurer, upon receipt of notice thereof, engaged the services of an adjustment bureau to investigate and adjust the loss. Thereafter, upon completion of this routine investigation of said claim, plaintiff’s insurer engaged the Gwertzman law firm. In August, 1972 Max J. Gwertzman, Esq. of that law firm conducted an examination of plaintiff’s president, Mr. Hy Zausner, under oath which was reduced to a transcript. It is immaterial for the purposes of this motion that such examination was taken pursuant to the usual standard provision requirement in property insurance policies (See Insurance Law, § 168, subd 5, Second Page of Standard Fire Policy, lines 113-118.) The fact is that the affirmation of attorney Max J. Gwertzman who conducted the examination of plaintiff’s president states that "said examination was conducted primarily to gather information for the purpose of instituting and prosecuting a subrogation proceeding against the defendants herein and against any other party who might be liable for the injuries suffered by plaintiff herein * * * Said examination was part of my preparation for trial.” In support thereof, a copy of page 32 of the transcript of such examination shows that the attorney examining the plaintiff’s president specifically referred to the insurance company’s intent to take subrogation against the defendants. In fact, it would be unreasonable to assume that on a $51,500 damage claim paid to plaintiff, the insurer would not seek a subrogation action against the parties who allegedly caused the accident; especially when the policy provides for the right of subrogation. (See Insurance Law, § 168, subd 5, Second Page of Standard Fire Policy, lines 162-165.)
*233 Defendants’ attorney’s (John L. Amabile) opposing affidavit concedes that shortly after the examination on September 19, 1972, the company paid plaintiff $51,500 and "received in return a 'loan receipt’ wherein plaintiff agreed to institute this suit at the Company’s expense and to repay such Toan’ only out of any recovery herein”. In addition, on the very next day, September 20, 1972 plaintiff’s insurer served a notice of subrogation interest and lien on defendants herein.
It is obvious that the statement taken by attorney Gwertzman of the plaintiff’s president (after the routine investigation of plaintiff’s claim by the adjustor had been completed) was taken in preparation of this subrogation litigation within the meaning of CPLR 3101 (subd [d]). Thus, it should not be made available to the defendants in the absence of a showing that the material can no longer be duplicated and that to withhold the transcript from defendants will result in hardship and injustice. (Kent v Maryland Cas. Co., 25 AD2d 653, 654.)
Defendants can make no such showing here, because defendants have already had the opportunity to examine before trial the plaintiff’s president; and full and honest answers therein would necessarily have included all pertinent information gleaned by Max J. Gwertzman through his examination; and defendants make no suggestion that plaintiff’s president was incomplete or dishonest in his answers. In addition, there is no suggestion whatever that the plaintiff’s president has disappeared or that he is not available and subject to such other disclosure devices as might be available to defendants. Under the circumstances, the withholding of the transcript could not, in any way, result in injustice or undue hardship to defendants. (Downey v Lunney, 80 Misc 2d 535.)